UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUCATIONAL IMPACT, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>        Defendant. | Case No. 15-cv-04510-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Docket Nos. 63-64 |

## I.   INTRODUCTION

Plaintiffs are Educational Impact, Inc. ("EI") and Teachscape Inc. ("Teachscape"). They filed insurance-related claims against Defendants Travelers Property Casualty Company of America ("Travelers") and Axis Insurance Company ("Axis"). The claims are based on insurance policies that Teachscape obtained from Defendants. Teachscape sought coverage under the policies after it was sued by EI, which alleged, *inter alia*, that Teachscape had engaged in false advertising by asserting that it was the only company authorized to make use of certain intellectual property in which EI claimed exclusive rights. As part of the resolution of EI's suit, Teachscape has assigned all of its rights against Defendants to EI. After this Court granted in part and denied in part Axis's motion for judgment on the pleadings, Plaintiffs and Axis settled their claims, and Axis was dismissed from the case. Docket No. 60. Currently pending before the Court are Plaintiffs' and Travelers' cross motions for summary judgment. Docket Nos. 63, 64. The central issue is whether Travelers breached its duty to defend Teachscape under a coverage provision for "advertising injury liability." The parties further dispute whether, if there was a duty to defend, Travelers denial constituted a breach of the covenant of good faith and fair dealings, as well as the amount of any potential liability. The Court **GRANTS** Travelers' motion for summary judgment

and **DENIES** Plaintiffs' motion.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

A.   General Background

Teachscape "is in the business of developing, constructing, marketing, and selling educational products and services to teachers, administrators, schools, . . . and other organizations in the field of education." Compl. ¶ 25. Teachscape's "products and services include professional development for teachers and administrators, teacher evaluation software, and online training." Compl. ¶ 25.

Travelers issued three Primary and Umbrella Policies to Teachscape, covering the period from May 25, 2011 to May 25, 2014. As relevant here, the policies provide that Travelers "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." Docket No. 64, Ex. A-82. According to the terms of the policy,

> Advertising injury . . . [m]eans injury caused by the infringement of copyright, 'title' or 'slogan' in your 'advertisement', provided that the claim is made or the 'suit' is brought by a person or organization that claims ownership of such copyright, 'title' or 'slogan.'

*Id.* Ex A-100-101. Under the policy's definitions, "'Title' means a name of a literary or artistic work," whereas "Slogan" means "a phrase that others use for the purpose of attracting attention in their advertising," not including the name of a person, organization, or business other than the insured. *Id.* at 101.

B.   Underlying Actions

Plaintiffs have alleged both breach of contract and bad faith because Travelers refused to provide Teachscape with a defense and indemnity with respect to several lawsuits. Those lawsuits were all filed by EI (to whom Teachscape has now assigned its rights against Defendants). One lawsuit EI filed was against Teachscape directly; the Court refers to that lawsuit as the "New Jersey lawsuit" or action. The remaining lawsuits (three total) were filed against customers of Teachscape; the Court refers to those lawsuits as the "customer lawsuits" or actions. Collectively,

2

the Court refers to the New Jersey and customer lawsuits as the "underlying lawsuits" or actions.

### 1. New Jersey Lawsuit

In February 2014, EI sued Teach (as well as others) in a federal district court in New Jersey (Case No. C-14-0937 FLW (LHG) (D.N.J.)).  In that complaint, EI alleged as follows.

"EI is in the business of developing, creating, marketing, and selling online professional development programs and services that include programs and services specifically for teacher evaluation and training."  Docket No. 64 Ex. L (N.J. Compl.) ¶ 10.  In 2006, EI entered into a contract with Charlotte Danielson, the author of a book titled "Enhancing Professional Practice – A Framework for Teaching."  N.J. Compl. ¶¶ 14, 27.  "The content of [Ms. Danielson's] book included a rubric [–] commonly referred to as the 'Framework for Teaching' [–] [which was] designed to define good teaching and provide a system for teacher evaluation."  N.J. Compl. ¶ 15.

Under the terms of EI's contract with Ms. Danielson, "the parties would work together to design and create a video-based online professional development program . . . based on Danielson's Framework for Teaching rubric.  The online program developed by EI, known as the Framework for Teaching Online Program would use real classroom video already owned by EI, and combine it with new video of Danielson commentary filmed by EI."  N.J. Compl. ¶ 28.  The contract between EI and Ms. Danielson "included a non-compete clause, which prohibited Danielson [and an affiliated entity] from creating or helping to create an online program that would compete with EI's Framework for Teaching Online Program."  N.J. Compl. ¶ 40.

EI began to market its Framework for Teaching Online Program in 2008.  *See* N.J. Compl. ¶ 42.  Consistent with the terms of the contract between EI and Ms. Danielson, additional content to the Program was added in 2009.  *See* N.J. Compl. ¶¶ 47, 49.  "In 2011, at the request of Danielson, EI again updated the Framework for Teaching Online Program."  N.J. Compl. ¶ 56.  "Danielson insisted that EI include in the Framework for Teaching Online Program the most updated version of the Framework for Teaching rubric, which was the 2011 iteration."  N.J. Compl. ¶ 56.

Sometime in 2010, *i.e.*, before EI's 2011 update, "Danielson began a dialogue with Teachscape on developing a 'psychometric assessment tool.'"  N.J. Compl. ¶ 57.  "Danielson

assured EI that any psychometric tool developed by Teachscape would not compete with EI, and in particular would not compete with EI's Framework for Teaching Online Program." N.J. Compl. ¶ 58.

In 2012, Ms. Danielson informed EI that

> she had entered into an exclusive arrangement with Teachscape. The result of the exclusive arrangement was that both Danielson and all of the consultants and trainers that were part of [an affiliated entity] would no longer be able to work with EI in any capacity. This included several independent members of the [affiliated entity] that had previously referred business to EI and had been paid commissions.

N.J. Compl. ¶ 62. Subsequently, EI learned that Ms. Danielson and Teach had actually "partnered to create a series of online programs that competed directly with EI's Framework for Teaching Online Program." N.J. Compl. ¶ 65.

"Starting in 2012, Teachscape began inaccurately representing to the K-12 marketplace that Teachscape's arrangement with Danielson made Teachscape the only business in the industry that could legally market and sell professional development programs for the 2011 iteration of the Framework for Teaching." N.J. Compl. ¶ 70. *See, e.g.*, N.J. Compl., Ex. C (press release, dated March 29, 2012); N.J. Compl., Ex. D (Teachscape's website).

Based on, *inter alia*, the above allegations, EI asserted claims against both Ms. Danielson and entities affiliated with her, as well as against Teachscape. The main claim against Ms. Danielson was breach of contract. *See* N.J. Compl. ¶ 90 *et seq.* More specifically, EI alleged that Ms. Danielson had "breached the non-compete clause [in their agreement] by licensing content to Teachscape and assisting Teachscape in creating a competing product." N.J. Compl. ¶ 93. The claims against Teachscape were as follows:

- *Violation of the Lanham Act, 15 U.S.C. § 1125(a).* According to EI, Teachscape's "advertising and promotional claims . . . constitute false and/or misleading descriptions of fact in interstate commercial advertising and promotion, as they materially misrepresent that Teachscape's are the only software products authorized for use with the 2011 Edition of Danielson's Framework for Teaching." N.J. Compl. ¶ 78. In fact "EI was granted explicit authorization by Danielson to use the 2011 Edition of her Framework for Teaching

4

with their online software program and training manual." N.J. Compl. ¶ 79.

- *Unfair competition (under Pennsylvania common law).* As above, EI alleged that Teachscape "made false or misleading statements that Teachscape digital products are the only digital products authorized for use with the 2011 and 2013 Editions of Danielson's Framework for Teaching." N.J. Compl. ¶ 86.
- *Tortious interference with contract.* According to EI, Teachscape knew that Ms. Danielson had a contract with EI and that, under that contract, she could not create a competing product. *See* N.J. Compl. ¶¶ 99-100. Nonetheless, Teachscape "caused or induced Danielson . . . to violate [her] contractual duties." N.J. Compl. ¶ 101.
- *Tortious interference with current and prospective economic advantage.* EI alleged that it "had an ongoing business relationship with trainers and consultants who were independent contractors of the Danielson Group [an entity affiliated with Ms. Danielson]." N.J. Compl. ¶ 105. Before Ms. Danielson began dealing with Teachscape, "EI received numerous business referrals from those independent contractors." N.J. Compl. ¶ 106. However, Teachscape, Ms. Danielson, and her affiliated entities "interfered with EI's business by instructing the independent contractors to cease making referrals to EI, and compelling the independent contractors' compliance by threatening to exclude the independent contractors from any future business relationship with Defendants." N.J. Compl. ¶ 108.
- *Injunctive relief.* With respect to Teachscape, EI asked for an injunction prohibiting it from continued sale of the competing online program and prohibiting it from continuing to make misrepresentations. *See* N.J. Compl. ¶ 115.

In May 2014, a few months after initiating the case, EI filed an amended complaint. The amended complaint contains many of the same allegations, although it clarifies that EI was authorized to use both the 2011 and 2013 editions of Ms. Danielson's Framework for Teaching (and not just the 2011 edition). The amended complaint also contains allegations that EI was given an *exclusive* license to the Framework for Teaching for the purpose of creating programs such as the Framework for Teaching Online Program. *See, e.g.*, Docket No. 64 Ex. M (N.J. FAC) ¶ 120 ("Teachscape and the Danielson Group [tortiously interfered with the contract between EI

5

and Ms. Danielson] without privilege or justification because they acted with knowledge of and intentional disregard for EI's rights as the exclusive licensee of the Framework for Teaching for the purpose of creating programs such as the Framework for Teaching Online Program."). Finally, the amended complaint alleges that the websites of The Danielson Group and Teachscape each contained "copyright notice[s]" describing Teachscape's purportedly exclusive "digital rights to publish and distribute software products based upon The Framework for Teaching Evaluation Instrument," and stating that "[a]ny direct or indirect attempts by any other company to publish this instrument would constitute a violation of Teachscape's contractual rights, and be deemed to be an illegal expropriation of Charlette Danielson's intellectual property rights." N.J. FAC ¶ 84. These "misrepresentations" led "many potential customers" to believe that "Teachscape was their only option for professional development and teacher evaluation based on the Framework for Teaching." N.J. FAC ¶ 85. The amended complaint did not assert as a cause of action copyright infringement.

2. <u>Customer Actions</u>

In September 2014 (*i.e.*, several months after filing the New Jersey action), EI filed lawsuits against three of Teachscape's customers, namely, the New York City Department of Education ("New York") (Case No. 1:14-cv-05177-DLI-MDG (E.D.N.Y.)); the Rochester City School District ("Rochester") (Case No. 6:14-cv-06503 (W.D.N.Y.)), and the Pittsburgh Public School District ("Pittsburgh") (Case No. 2:14-cv-01272-RCM (W.D. Pa.)). *See* Compl. ¶ 30 & Exs. H-J (complaints in customer actions). In each of the customer actions, EI expressly pled a claim of copyright infringement. The basic allegations in each customer action are as follows.

First, the Framework for Teaching is a protected work registered with the U.S. Copyright Office. *See, e.g.*, N.Y. Compl. ¶¶ 12, 25. Second, EI "is the exclusive licensee of the right to create a derivative work of the Charlotte Danielson Framework for Teaching in the form of an online or CD-ROM-based teacher training program." N.Y. Compl. ¶ 24. Third, each government entity "has purchased and continues to use an infringing online teacher training program based on the Charlotte Danielson Framework for Teaching." N.Y. Compl. ¶ 26.

C.     Travelers Disclaims Coverage

Teachscape tendered the initial complaint in the New Jersey action to Travelers on April 3, 2014. Docket No. 63 Ex. D. Travelers' Claim Log indicates that it investigated the claim the next day, and determined that there was no "potential for coverage." Docket No. 63 Ex. E. On April 9, 2014, Travelers issued a formal declination letter. The Company noted that in its policy, "advertising injury is defined as injury caused by the infringement of copyright, title or slogan in your advertisement" and that in the New Jersey action complaint, "[t]here is no claim for copyright infringement, nor is there any claim for infringement of title . . . or slogan." Docket No. 63 Ex. F at 7. Therefore, because "no covered type of injury or damage has been alleged, there would be no coverage for this claim under any of the Travelers policies." *Id.* at 8.

Teachscape next tendered the customer complaints to Travelers on October 22, 2014. Docket No. 63 Ex. E at 10. On October 31, 2014, Travelers declined coverage for those claims because no claims were made against Teachscape in the customer actions. Docket No. 63 Ex. K. On May 18, 2015, Teachscape sent Travelers the FAC in the New Jersey action and asked the company to reconsider its coverage decision. Docket No. 63 Ex. M. On June 9, 2015, Travelers reaffirmed its denial of coverage. As to the New Jersey action, Travelers stated that "[w]e do not find any changes to the substantive allegations or cause of action in the First Amended Complaint that would change [our] conclusion" that none of the claims was covered under the policy. With respect to the customer actions, Travelers again noted that "[t]hose suits do not name Teachscape as a defendant and therefore also do not allege any type of covered injury or damage against Teachscape." *Id.* at 2.

D.     This Court's Prior Ruling

On September 30, 2015, Plaintiffs filed suit in this Court asserting claims against Travelers and Axis for Breach of Contract, based on the insurance companies' failure to defend and indemnify under their respective policies, breach of the implied covenant of good faith and fair dealing, and declaratory relief with respect to the companies' duties under the policies. Docket No. 1. On February 2, 2016, Axis moved for judgment on the pleadings. Docket No. 31. On April 26, 2016, the Court granted the motion in part and denied it in part. Docket No. 49. Unlike

7

the Travelers policy here at issue, the Axis policy included coverage for liability for damages resulting from a "wrongful act" which was defined in the policy in part as "[n]egligent act, error, or omissions, which shall include a negligent act, error or omission that results in copyright infringement of software but only if such infringement arises out of Technology Services or software developed or created by the Insured and distributed, licensed or sold to others by the Insured for compensation;" in another relevant context, "wrongful act" is defined as "[i]nfringement of copyright, including any related misuse of such intellectual property rights in Matter, provided, however, this does not include copyright infringement of software." *See id.* at 10-11. Axis argued that there was no coverage under these provisions because the complaint in the New Jersey action referred only to allegedly wrongful *advertising* by Teachscape, and did not allege a claim of copyright infringement. The Court, however, concluded that there was a duty to defend under those provisions because the complaint in the New Jersey action "could have been amended to assert a claim other than false advertising – more specifically, for copyright infringement, which does constitute a Wrongful Act under the" policy. *Id.* at 15.

### III.  DISCUSSION

A.  Legal Standard

"Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009)). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1173 (9th Cir. 2016) (quoting *R.W. Beck & Assocs. v. City & Borough of Sitka*, 27 F.3d 1475, 1480 n.4 (9th Cir. 1994)).

In this case, there are no genuine issues of material fact.[1] The pivotal questions are legal

---

[1] The only fact that appears to be disputed is whether Travelers knew of the FAC in the New Jersey action prior to Teachscape's May 18, 2015 letter. This fact is not relevant to the issues

1  ones: based on undisputed facts, did Travelers have a duty to defend, and whether, if it did, its
2  refusal to do so constituted a breach of the covenant of good faith and fair dealing?

### B.   Travelers' Duty to Defend

Coverage clauses in insurance policies are interpreted "broadly, protecting the objectively reasonable expectations of the insured." *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990). Consistent with this approach, ambiguities are generally resolved in favor of coverage. *See id.* In assessing coverage in the instant case, the Court also bears in mind that an "insurer's duty to defend is broader than its duty to indemnify. The latter duty runs only to claims that are actually covered by the policy, while the duty to defend extends to claims that are merely *potentially* covered." *Crawford v. Weather Shield Mfg. Inc.*, 44 Cal. 4th 541, 547 (2008) (emphasis added); *see also Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 295 (1993) (stating that "[t]he [insurer's] defense duty is a continuing one, arising on tender of defense and lasting until the underlying lawsuit is concluded, or until it has been shown that there is *no* potential for coverage") (emphasis in original).

### 1.   The New Jersey Action

Plaintiffs' primary argument that Travelers had a duty to defend is that that result is required under the law of the case doctrine by the Court's prior ruling with respect to Axis. Specifically, Plaintiffs point to the fact that in its prior order, the Court held that, even though the New Jersey FAC did not explicitly allege a copyright infringement claim, the allegations in the FAC and the customer complaints "were sufficient to trigger AXIS's duty to defend relating to claims of copyright." Docket No. 63 (P's Motion) at 9. Plaintiffs further contend that "the material facts concerning Travelers' denial of coverage in the Underlying Matters and Travelers' rationale for declining coverage in those matters are identical to the facts and rationales determined in AXIS's Motion for Judgment on the Pleadings." *Id.* at 9. This is so, Plaintiffs argue, because in Travelers' letter declining coverage, Travelers pointed to the fact that "there is no claim for copyright infringement" in the New Jersey FAC. Plaintiffs therefore reason that,

---

presented, however.

1  because the Court found that the New Jersey FAC could be amended to plead a copyright
2  infringement claim, Travelers' duty to defend is identical to that for Axis as found by this Court.
3        As Travelers correctly points out, however, Plaintiffs' argument fails entirely because the
4  relevant coverage provisions in the Axis policy were materially different from those at issue in the
5  Travelers policies.  *See* Docket No. 70 (D's Opp.) at 8-10.  As noted above, the Axis policy
6  provided coverage for liability resulting from broadly defined "wrongful acts," including
7  copyright infringement.  By contrast, the only provision under which Plaintiffs argue that
8  Travelers had a duty to defend and indemnify is the provision covering "advertising injury," which
9  is defined as "injury caused by the infringement of copyright . . . *in your advertisement*."[2]  Docket
10  No. 64 Ex A-100-101 (emphasis added).  By its terms, this provision does *not* apply to general
11  copyright infringement, including the infringement that EI claimed Teachscape engaged in by
12  producing a product based on the Framework for Teaching for which EI alleges it was the
13  exclusive licensee.  To result in coverage under the Travelers policy, the relevant infringement
14  must have occurred *in Teachscape's advertisement*.  But this Court's prior order makes clear that
15  the FAC could be amended to state a copyright claim not by looking at the advertisements that EI
16  alleged constituted false advertising, but instead to Teachscape's *underlying product*.  Specifically
17  this Court held that "the New Jersey Complaint could be amended to plead copyright infringement
18  by [Teachscape] since a copyrighted work (Framework for Teaching) was *at the core of [its]*
19  *product*."  Docket No. 49 at 17 (emphasis added).  This potential substantive copyright
20  infringement constituted a "wrongful act" under the *Axis* policy, but substantive copyright
21  infringement is not an "advertising injury" under the Travelers policy.  Nothing in the
22  advertisement itself is alleged to infringe on any copyright.  Thus, the Court's ruling that the FAC
23  could be amended to state a copyright claim and fall under the Axis policy, which covered
24  "wrongful acts," is not determinative to the present issue – whether Travelers had a duty to defend
25  under *its* policy which covered only "advertising injury."  For that reason, the law of the case does
26  not control the outcome of the instant motion.

---

[2] As noted above, the provision also applies to the infringement of "title" or "slogan" in an advertisement, but Plaintiffs do not argue that those provisions are applicable.

1  In addition to the express terms of the Travelers policy limiting coverage to "advertising injury," under California case law, an "advertising injury" has been interpreted to require a causal connection between the claimant's injury and the insured's advertising activity. *Simply Fresh Fruit, Inc. v. Cont'l Ins. Co.*, 94 F.3d 1219, 1221 (9th Cir. 1996). Courts have held that such a causal connection does not exist unless the alleged infringement takes place *in the advertisement* of the insured. In an analogous case involving a similar provision, the California Court of Appeal held that "[w]here the claim in the underlying action is that an insured directly infringed the patents of another by the *sale* of its products, rather than by the form of the insured's advertisements, then the patent infringing act did not occur in the course of the insured's advertising activities within the meaning of the relevant policy language." *Mez Indus., Inc. v. Pac. Nat. Ins. Co.*, 76 Cal. App. 4th 856, 865–66 (1999) (emphasis in original).[3] As noted above, this Court previously found that the New Jersey FAC could be amended to state a claim of copyright infringement not because of Teachscape's advertising activities, but rather because "a copyrighted work (Framework for Teaching) was at the core of [its] product." Docket No. 49 at 17. As in *Mez*, it was the production and sale of Teachscape's products that potentially infringed EI's copyrights, not its advertisements. The wrongful conduct alleged with respect to advertisements was not copyright infringement, but the making of a false statement that Teachscape's products were the only ones authorized for use with Danielson's Framework for Teaching. There was no allegation, nor even any suggestion, that the advertisements themselves contained or otherwise made use of any material for which EI held any copyrights.

Plaintiffs' arguments to the contrary are unavailing. First, Plaintiffs at various times appear to misstate the relevant standard, claiming that the relevant issue is whether there is a causal connection between EI's *damages* and a copyright infringement claim. *See e.g.*, Docket No. 75 (P's Reply) at 8. But as noted above, the question is whether there is a causal connection

---

[3] Plaintiffs argue that *Mez* is inapplicable because it is a patent, rather than a copyright case, but there is no indication in that case that the general advertising injury principles discussed therein are only applicable to patents. Indeed, the *Mez* court relies principally on non-patent cases in reaching its conclusion. *See, e.g.*, *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1275 (1992).

between the alleged copyright infringement and Teachscape's advertising. Second, Plaintiffs misrepresent this Court's prior holding. They argue that because the FAC asserted damages based on Teachscape's advertisements, and this Court found that the FAC could have been amended to state a copyright infringement claim, it is necessarily the case that "the damages alleged from that copyright infringement claim must also directly related to Teachscape's advertising activity." *Id.* at 9. But as discussed above, this Court held that a copyright infringement claim could be stated only to the extent that EI looked *beyond* Teachscape's advertisements to its underlying product. Third, Plaintiffs argue that the Court should rely on *Lebas Fashion Imps. of USA, Inc. v. ITT Hartford Ins. Grp.*, 50 Cal. App. 4th 548 (1996). But *Lebas* found a duty to defend under an advertising injury provision "where the insured had allegedly appropriated another's trademark *for use in its marketing and advertising*." P's Reply at 9 (emphasis added). Thus, unlike in this case, the alleged infringement in *Lebas* actually took place within the insured's advertising, making the advertising injury provision applicable. If anything, *Lebas* provides an example of precisely what is lacking in this case.

At the hearing on this motion, Plaintiffs for the first time raised two arguments that were not raised in their briefing: First, Plaintiffs assert that Travelers had a duty to defend based on a theory that Teachscape's advertisement infringed not only EI's copyright, but also its "title," as used in the policy, based on Teachscape's use of the title "Framework for Teaching." Second, Plaintiffs contend that Teachscape's advertisements infringed EI's copyrights because its website explicitly referenc[ed] the components and critical attributes of the Framework for Teaching," included videos explaining "how to use the Framework for Teaching in an online format," and provided links whereby visitors could download the Framework for Teaching in its entirety. Docket No. 80 at 2-3. As an initial matter, the Court notes that these arguments are waived. *See Arik v. Astrue*, No. C 08-5564 SBA, 2010 WL 6490066, at *8 (N.D. Cal. Mar. 29, 2010). Despite three opportunities to do so, Plaintiffs did not raise these points in their briefing, and Travelers' accordingly had no opportunity to reply. Second, while the Court granted permission to Plaintiffs to enter a supplemental filing directing the Court's attention to those portions of the record Plaintiffs claim support these claims, the Court specifically instructed Plaintiffs not to provide any

1  additional briefing.  Plaintiffs' filing violates that instruction by fleshing out Plaintiffs' argument
2  with respect to the referenced evidence.  *See* Docket No. 80.
3       Nonetheless, the Court will address Plaintiffs' claims on the merits.  As to Plaintiffs' first
4  claim, "title" is defined under the policy as the "title of a literary or artistic work."  Docket No. 64,
5  Ex. A-101.  The Framework for Teaching does not appear to be either a literary or artistic work,
6  but rather a "rubric . . . designed to define good teaching and provide a system for teacher
7  evaluation."  N.J. FAC ¶ 15.  Moreover, there are no allegations that EI had any copyrights in the
8  *title* to the Framework for Teaching; EI merely alleged that it held an exclusive license to "*use* the
9  Framework for Teaching for the purposes of creating online and CD based programs."  *Id.* ¶ 89
10  (emphasis added).  EI's license was thus limited, and it did not extend to use of the title of
11  Danielson's own work.  As noted above, the Travelers policy applies only to claims of
12  infringement in an advertisement where the "claim is made or the 'suit' is brought by a person or
13  organization that claims ownership of such copyright, title or slogan."  Docket No. 64, Ex. A-101.
14  Because EI does not claim ownership of the title "Framework for Teaching," there is no coverage
15  under the policy.
16       Plaintiffs' second claim fails for a similar reason.  Plaintiffs argue that Teachscape's
17  advertisement, specifically its website, infringed Plaintiffs' copyrights because the advertisement
18  referenced components of the Framework for Teaching and made it available for download.  But
19  any copyrighted material that was therefore used in Teachscape's advertisement belonged to
20  Danielson, not EI.  Thus, as with the "title," because EI does not claim ownership of the material
21  used in Teachscape's advertisement, there is no claim for advertising injury.  Plaintiffs are correct
22  that under the definitions set out in the Copyright Act, an exclusive licensee may qualify as a
23  "copyright owner" for most purposes.  *See* 17 U.S.C. § 101 ("A 'transfer of copyright ownership'
24  is an assignment, mortgage, *exclusive license*, or any other conveyance, alienation, or
25  hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or
26  not it is limited in time or place of effect, but not including a nonexclusive license." (emphasis
27  added)).  But the Copyright Act also makes clear that copyright ownership is divisible, stating that
28  "'Copyright owner,' with respect to *any one of the exclusive rights* comprised in a copyright,

13

1  refers to the owner of *that particular right*." *Id.* (emphasis added).  Plaintiffs have not alleged that
2  EI held an exclusive license to the Framework for Teaching *as a whole*, but rather only that it held
3  an exclusive license to use the Framework for the purpose of developing an online program.
4  Teachscape could thus only infringe EI's license through the production of its underlying product
5  (an online program), not the written components of Framework for Teaching.  Indeed, according
6  to the allegations in EI's New Jersey FAC, Teachscape's website makes this distinction clear.  The
7  website stated that while "[a]ny educator may download [the Framework for Teaching] and use
8  the print version for his own personal use . . . Teachscape and only Teachscape can incorporate the
9  content of the Framework for Teaching . . . in its software products."  N.J. FAC ¶ 83.  The fact
10 that Teachscape's advertisements may have referred to or provided links for downloading the
11 Framework for Teaching is beside the point.  Only Teachscape's actual production and
12 distribution of a competing software product could have infringed the limited scope of EI's
13 claimed license.[4]

14 In sum, because there is no allegation – and no facts to support an allegation – that
15 Teachscape infringed EI's copyright in its advertisements, there was "*no* potential for coverage"
16 under the Travelers policy, *Montrose Chem. Corp.*, 6 Cal. 4th at 295 (emphasis in original), and
17 thus no duty for Travelers to defend.

18 2. The Customer Actions

19 Travelers argue that they had no duty to defend in the Customer Actions because
20 Teachscape was not named as a defendant in those cases, and the policies provide only that
21 Travelers has a duty to defend "suits" against Teachscape.  D's Motion at 20-21.  Plaintiffs do not
22 dispute this point; they argue only that Travelers had a duty to defend the New Jersey action, and
23 that because the customer actions were "inextricably intertwined" with the New Jersey action,
24 there was a duty to defend in those cases as well.  P's Opp. at 17.  Under the terms of the policy,
25 there is no coverage because Teachscape was not named in the customer lawsuits.  In addition,

---

[4] Moreover, it is not at all clear that provision of a website link facilitating download of allegedly copyrighted material would constitute infringement "in" Teachscape's advertising.  EI has cited no authority to establishing such a proposition.

14

1  EI's new arguments also falter because the premise is false; because there was no duty to defend
2  the New Jersey action, there was necessarily no duty in the allegedly "inextricably intertwined"
3  customer actions.

### IV. CONCLUSION

Because Travelers had no duty to defend in any of the actions, its denial of coverage could not have violated the covenant of good faith and fair dealing. The Court accordingly **GRANTS** Travelers' motion for summary judgment in its entirety, and **DENIES** Plaintiffs' motion for summary judgment.

This order disposes of Docket Nos. 63 and 64.

**IT IS SO ORDERED**.

Dated: December 21, 2016

_____
EDWARD M. CHEN
United States District Judge